COMMONWEALTH *vs.* TERRY T. THOMAS.

No. 97-P-0349.

Middlesex. December 5, 1997. - April 6, 1998.

Present: BROWN, DREBEN, & KASS, JJ.

*Practice, Criminal,* Cross-examination by prosecutor, Comment by prosecutor, Argument by prosecutor, Waiver of trial by jury. *Evidence,* Cross-examination, Prior misconduct, Prior conviction. *Intoxication. Motor Vehicle,* Operating under the influence. *Waiver. Controlled Substances.*

At the trial of a criminal complaint, the trial judge's decision to allow the prosecutor to cross-examine the defendant as to prior arrests for similar offenses did not constitute reversible error, where such inquiry was pertinent to probe the credibility of a statement made by the defendant on direct examination. [524-525]

At the trial of a complaint charging operation of a motor vehicle while under the influence of alcohol, statements made by the prosecutor in closing argument that the defendant had lied on the stand were not impermissible [525-526], and comments by the prosecutor that the jury should rely on their common sense in evaluating the defendant's explanation for his breathalyzer results were not improper [527].

At a criminal trial, the prosecutor's improper reference in closing argument to the defendant's prior convictions for similar offenses, which were matters not properly in evidence and specifically ordered excluded by the judge, did not constitute reversible error, in light of the overwhelming evidence of the defendant's guilt and the judge's curative instructions. [526-527] BROWN, J., dissenting.

A jury waiver colloquy in a criminal case was not rendered inadequate, in the circumstances, by the trial judge's use of guilty plea terminology in the colloquy; nor did the judge's unintentional violation of G. L. c. 263, § 6, in allowing the defendant to waive a jury trial as to two charges in the complaint at the close of all the evidence and before submission of the case to the jury, constitute reversible error. [527-528]

This court concluded that a criminal defendant's one-year committed sentence for a first time conviction of unlawful possession of marihuana should be revised to six months, in accordance with G. L. c. 94C, § 34. [528-529]

COMPLAINT received and sworn to in the Woburn Division of the District Court Department on April 11, 1996.

The case was tried before *Jonathan Brant,* J.

*Janine T. Bandino* for the defendant.

*Lincoln S. Jalelian,* Assistant District Attorney, for the Commonwealth.

KASS, J. In making his closing argument, the assistant district attorney made one minor and one major misstatement of fact. On balance, and particularly in light of the strength of the government's case, we are not persuaded by the argument of the defendant that the missteps in the prosecutor's closing require reversal. Terry Thomas, the defendant, was found guilty by a jury of operating a motor vehicle while under the influence of intoxicating liquor. Two other counts in the complaint, operating a motor vehicle after his license had been suspended (G. L. c. 90, § 23) and possession of a Class D substance (G. L. c. 94C, § 34), were put to the District Court judge who presided at the trial, and he found the defendant guilty. On appeal, in addition to the claim of improper closing argument, the defendant urges that the judge improperly allowed the prosecutor to cross-examine the defendant about prior arrests for driving while under the influence of liquor and that the judge engaged in an inadequate colloquy with the defendant who, after the close of the evidence, chose to waive putting to the jury any count other than the one for operating while under the influence of liquor (OUI).

These are the facts the jury could have found, taking the evidence in the light most favorable to the Commonwealth. Shortly before 2:00 A.M. on April 11, 1996, Stephen Altieri, a State trooper, stopped the defendant for speeding. The defendant had been doing seventy-nine miles per hour, significantly over the sixty-five mile per hour limit. Trooper Altieri smelled "a moderate odor of intoxicating beverage coming from the vehicle," in which the defendant was alone. Uncertain whether the odor was an emanation of the vehicle or an exhalation of the defendant, Trooper Altieri asked the defendant to recite the alphabet. The defendant managed that task but his speech was slurred and hard to understand; his eyes were bloodshot.

Now quite satisfied about the source of the smell of alcohol, Trooper Altieri ordered the defendant out of his car for field sobriety tests. The defendant fell back against his car when he stepped out. He had to push himself off the vehicle to regain his footing and then walked unsteadily. Trooper Altieri administered the one-legged stand test, in which the subject is asked to stand

on one leg while the tester counts to thirty. The defendant did badly; he had to flap his arms for balance, put his leg down at the count of seven, eighteen, nineteen, and twenty-one, and gave up on the test altogether at the count of twenty-one. "I can't do it," the defendant said. Then came the nine-step heel-to-toe test. That test the defendant also failed dramatically.

Persuaded that the defendant was drunk, Trooper Altieri placed him under arrest. An inventory search of the car turned up a six-by-four-inch box containing marihuana. At the State police barracks, the defendant took a breathalyzer test on which he blew a blood alcohol level of .11, above the statutory presumption of impaired status that an .08 reading would produce. See G. L. c. 90, § 24(1)(*e*). The booking officer, Trooper Peter Kane, checked off the defendant's state of intoxication as obvious on a rating scale of extreme, obvious, slight, and none.

1. *Claim of improper cross-examination.* The defendant had been convicted thrice before of drunk driving, facts that his counsel moved in limine to exclude, should the defendant testify. That motion was allowed. During direct examination of the defendant, his counsel inquired whether he had been advised of his constitutional rights while being booked. In that connection, defense counsel asked: "Were you familiar with those rights?" The defendant answered, "Somewhat," "Yes," and volunteered, "I had been arrested for OUI once before." The prosecutor exploited the opening aggressively, under cover of attacking the defendant's credibility:

> *Q.* "Now you haven't told the truth here. Isn't that correct?"
>
> *A.* "I know what you're getting to."
>
> *Q.* "Just answer my question, sir. Did you tell the truth?"
>
> *A.* "Yes, I always tell the truth."
>
> *Q.* "Okay. You told us you were convicted once before —"
>
> *A.* "I didn't say convicted. I said I had been arrested once before."

*Q.* "I apologize. Thank you. You told the jury you had been arrested once before for OUI."

*A.* "Right."

*Q.* "Okay."

*A.* "I should have just said before. I've been arrested more than once."

*Q.* "Well, sir, you recall now, don't you, that you've been arrested three times before for OUI. Isn't that correct?"

*A.* "That's correct."

Lest any juror miss the point, the prosecutor worked the same vein again through another sequence of questions, with the same damaging effect to the defendant.

According to the defendant, the flaw in the cross-examination was that it admitted evidence of prior bad acts and explored a subject, prior convictions, from which the prosecutor had been instructed by the judge to stay away. To be sure, evidence of prior bad acts may not be received to show the defendant's propensity to commit the crime charged, *Commonwealth* v. *Trapp*, 396 Mass. 202, 206 (1985); *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 760 (1997), and admission of evidence of an offense the same as that charged is disfavored, although not per se excludable. *Commonwealth* v. *Chartier, supra* at 762. Here, the first mention of like prior misconduct was from the mouth of the defendant and was made in a form designed to minimize, i.e., it just happened once. The entire tenor of the defense had been to minimize and rationalize what the arresting State trooper had observed of the defendant's imprecision of speech and impaired physical coordination. It was pertinent to the defendant's credibility, therefore, to probe what "I was arrested once before" really meant.

Conscious of the judge's decision not to let the government get into prior convictions, the assistant district attorney asked permission of the judge to explore on cross-examination the opening the defendant's testimony had provided. The judge told the assistant district attorney that he was not to ask questions about prior OUI *convictions* but could, for impeachment purposes, inquire about prior OUI arrests. We think that the

judge's resolution was within his discretion. See *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. at 762. Cf. *Commonwealth* v. *Cadwell*, 374 Mass. 308, 313-314 (1978). Compare *Commonwealth* v. *Hogan*, 12 Mass. App. Ct. 646, 649 n.4 (1981).

But like the scorpion riding across the river on the back of a turtle, the assistant district attorney could not quite suppress what was in his nature. As the transcription of his cross-examination set out above shows, the prosecutor asked the defendant whether he had not been *convicted* of OUI once before. The defendant immediately corrected the prosecutor, making the distinction between arrest and conviction, and the prosecutor apologized for his mistake. Overall, the prosecutor's cross-examination was within bounds and the damage sustained by the defendant arose more out of what he had said about his own history than transgressions of the prosecutor.

2. *Claim of improper closing argument.* The first objection that the defense makes to the prosecutor's closing argument is his statement that "[w]e have agreed that the defendant blew a .11, .12 on the breathalyzer." That is a minor and insignificant variation from the actual state of the evidence, that the defendant blew .11. The following passage was more troubling:

> "The testimony of the defense witnesses was wholly incredible. It was not believable. He lied to you. This defendant lied to you. He took the oath, then he lied to you. He told you he had been arrested once before for operating under the influence of liquor. That was a lie. He acknowledged that lie when I took out the three prior convictions, and I showed them to him. He acknowledged that lie. He was not credible to you."

The harping on the word "lie" as noun and verb was excessive, especially as the defendant's "I've been there before" answer was scarcely in the category of gross distortion, and as the defendant had been disarmingly candid when challenged on his reply. It is not impermissible, however, to argue that a witness has lied, and bad taste is not necessarily improper argument in the legal sense. See *Commonwealth* v. *Murchison*, 418 Mass. 58, 60 (1994). We extend to the jury credit for some sophistication in filtering hyperbole. *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987). *Commonwealth* v. *Benson*, 419 Mass. 114, 120 (1994). *Commonwealth* v. *DeVeau*, 34 Mass. App. Ct. 9, 14

(1993). The jurors, after all, had seen and heard the defendant testify, and they would have been able to distinguish between a stretcher and a whopper.

More serious was the prosecutor's reference to three convictions exhibited to the defendant. The prosecutor had expressly been told not to challenge the defendant with documentary evidence of conviction and had avoided doing so during the presentation of evidence. Whether deliberate or inadvertent, this further reference by the prosecutor to convictions was a blow below the belt. *Commonwealth* v. *McColl*, 375 Mass. 316, 324-325 (1978). *Commonwealth* v. *Dias*, 14 Mass. App. Ct. 560, 564-565 (1982). Nonetheless, we do not think it the stuff of reversible error. The jury by this time well understood that the defendant had previously been involved with OUI episodes. The evidence of intoxication — scientific and unscientific — had been powerful. For his part, the judge (there had been passionate objection by the defense after the closing arguments and the defense had moved for a mistrial) reminded the jury "that the opening statements and closing arguments of counsel are not a substitute for evidence. They are an opportunity for the attorneys to address you and to describe the case from their respective points of view. Any hyperbole that they may have engaged in, particularly in closing argument, is something that you should consider only as an opportunity for argument." The judge also said:

> "When you evaluate how reliable a witness's testimony is, you may take into account whether the witness has acknowledged an inconsistency between their testimony in this trial and any prior statements or prior involvements. The fact that a witness may have acknowledged, for example, prior involvement with the law is not, in itself, evidence relative to this trial. To the extent that a witness has acknowledged a prior inconsistent statement or an inconsistency with fact, that is simply an element that you may take into consideration as you evaluate the accuracy of the testimony that was given here."

We think those instructions acted as a sufficient antidote to the relatively impotent toxin that the prosecutor had introduced in his closing. *Commonwealth* v. *Chubbuck*, 384 Mass. 746, 753 (1981). *Commonwealth* v. *Kozec*, 399 Mass. at 517-518. *Commonwealth* v. *Meadows*, 33 Mass. App. Ct. 534, 539 (1992).

*Commonwealth* v. *Chartier,* 43 Mass. App. Ct. at 765. Our decision, on balance, not to reverse the conviction ought not to be viewed by the prosecutor as condonation of his impropriety. See *Commonwealth* v. *Kozec, supra* at 516-517.

Concerning the defendant's testimony about having consumed only two beers that night, the prosecutor argued to the jury: "Using your common sense and your life experiences, if you were to consume two beers from a period of 9:30 to 1:00, common sense, would you then go blow well above the legal limit in Massachusetts?" That was not, as the defense argues, an assertion beyond the common knowledge of the jury. The jury had been informed that a breathalyzer reading of .08 created a presumption of intoxication. See G. L. c. 90, § 24(1)(*e*); *Commonwealth* v. *Neal,* 392 Mass. 1 (1984); *Commonwealth* v. *Cochran,* 25 Mass. App. Ct. 260, 262-263 (1988). The jury, on the basis of common experience, were capable of finding whether it was plausible that a man would register well over that reading on two beers in three and one-half hours.

3. *Inadequacy of colloquy with the defendant.* Upon completion of all the evidence, defense counsel made a strategic decision to submit to the trial judge the decisions on the complaints against the defendant of driving after suspension of his license and of possession of marihuana. Presumably the defense thought that it was wiser not to have the jury chewing on those lesser charges, as to which the defendant's position was hopeless. Defense counsel suggested that his client would offer pleas of guilty on the lesser counts. The judge thought the better route, now that the case had been fully tried, was to waive a jury as to the lesser counts, leaving it to the judge to make findings.

This led to a colloquy about jury waiver, which proceeded admirably until the judge began to mix into his discussion with the defendant the vocabulary of taking a plea of guilty, e.g., "I'll rule on your plea, [in] which you're acknowledging that these charges are true . . . ." On appeal, the defendant argues that the plea was defective by reason of nonconformance with Mass.R.Crim.P. 12, 378 Mass. 866 (1979).[1] Despite the lapse into the "plea" terminology, a fair reading of the judge's col-

[1]The issue concerning the plea is not properly before us, as it was only raised in the defendant's reply brief, the defendant having realized, after reading the Commonwealth's brief, that he could be convicted and serve time under the lesser charges even if acquitted on the OUI charge. As will appear, there was an error in the sentence on the possession of marihuana count. As it

loquy with the defendant is that it was about the judge deciding the case on the testimony before him. The judge concluded the colloquy as follows:

> "All right. I find that your waiver of the right to have the matter considered by the jury after trial is made freely knowingly, and with full knowledge of the consequences. And I find, based on the evidence in this case and your plea, that there is sufficient evidence to support the plea, and sufficient evidence has been presented to establish these charges beyond a reasonable doubt. So, I'm finding you guilty of counts A and C."

What was paramount, were the findings of guilty by the judge on the basis of the full presentation of the evidence in a trial setting, i.e., with witnesses subjected to cross-examination and the submission of exhibits subject to the rules of evidence. As to what the defendant might be giving up in not placing the lesser counts before the jury, the judge's colloquy was more than adequate. Cf. *Commonwealth* v. *Hill*, 20 Mass. App. Ct. 130, 132 (1985), as to the distinction between findings based on admitted facts and findings based on evidence.

There was no *reversible* error in the conversion of the lesser counts to jury-waived issues, although such a conversion violates G. L. c. 263, § 6. Under that statute, a defendant who wishes "to waive a jury trial must do so before the jurors are empanelled." *Commonwealth* v. *Collado*, 426 Mass. 675, 677 (1998). Permitting a defendant to waive a jury after trial not only offends G. L. c. 263, § 36, but opens unnecessarily an area of appellate argument about the method by which issues were removed from jury consideration.

4. *The sentence for possession of marihuana.* For his conviction of unlawful possession of marihuana, the defendant received a sentence of one year, to be served concurrently with a longer one (two and one-half years, eighteen months to serve) for the OUI conviction. The penalty prescribed by G. L. c. 94C, § 34, for unlawful possession of marihuana is not more than six months in the house of correction or a fine of $500, or both. The record does not disclose that the defendant had been convicted previously of possession of marihuana, which would

will be necessary to discuss briefly that lesser charge, we thought it best to dispose of even an improperly launched challenge to that conviction.

have subjected him to a longer sentence. His sentence on the marihuana offense should be revised to six months in the house of correction, to be served concurrently.

On the charge of possession of marihuana, the judgment is vacated, and the defendant shall be resentenced in accordance with G. L. c. 94, § 34. The judgments on the other counts are affirmed.

*So ordered.*

BROWN, J. (dissenting in part). I disagree as to the potency of the toxin injected into the trial by the prosecutor. I think it was lethal. The defendant should have a new and fairer trial on the complaint charging operating a motor vehicle under the influence of intoxicating liquor.

Fair trial means fair, i.e., as close to impeccable as possible. Cf. *Townsend* v. *Sain*, 372 U.S. 293 (1963). Let us not forget, trials are not mini-Super Bowls, where only victory is sought. Prosecutors and defense counsel are officers of the court and that awesome responsibility compels each to act fairly and responsibly in the performance of their respective roles.

The manner in which the prosecutor handled the matter of the defendant's prior arrests (and the interchanging of the term "convictions" at several instances) was reckless, unprofessional, and, worst of all, patently unfair.[1] As we have often said, the Commonwealth permissibly may play "hard ball," but "foul" ball is inherently unfair and, of course, totally unacceptable.

As to the prosecutor's closing argument, the majority acknowledges, as it must, that this "was a blow below the belt." Not only was the matter referred to in the prosecutor's closing argument not in evidence, but the judge had specifically ordered it excluded. Further, it was almost certainly prejudicial. Admonitions against careless and poor preparation resulting in improper closing argument are too numerous to list. I will merely point to the cases and authorities cited in *Commonwealth* v. *West, ante* 150, 153 n.4 (1998), as well as the language in a recent opinion authored by the Chief Justice of the Supreme

---

[1]The judge's ruling permitting the questioning regarding prior arrests was also, I think, unwise.

Judicial Court in a civil case: "A lawyer should not be free to argue improperly to a jury, relying on the judge to give a saving instruction. Even after a long trial . . . , the allowance of a new trial motion may be the only fair resolution of a problem that counsel wilfully or recklessly created." *Birbiglia* v. *Saint Vincent Hosp., Inc.*, 427 Mass. 80, 88-89 (1998).