NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

14-P-21                                            Appeals Court

COMMONWEALTH  vs.  HECTOR GARCIA.

No. 14-P-21.

Bristol.     December 1, 2014. - September 11, 2015.

Present:  Rubin, Milkey, & Carhart, JJ.


Practice, Criminal, Waiver of appellate rights.  Constitutional
     Law, Waiver of constitutional rights, Trial by jury.
     Search and Seizure, Reasonable suspicion.



     Complaint received and sworn to in the New Bedford Division
of the District Court Department on April 13, 2012.

     A pretrial motion to suppress evidence was heard by
Christopher D. Welch, J., and the case was heard by him.


     Matthew Malm for the defendant.
     Owen J. Murphy, Assistant District Attorney, for the
Commonwealth.


     RUBIN, J.  After a bench trial, the defendant was convicted

of carrying an unlicensed firearm and of carrying a loaded

firearm in violation of G. L. c. 269, § 10(a) and (n).[1]  In this

_____

     [1] The defendant was also found guilty of resisting arrest.
That charge was placed on file for two years.

appeal, the defendant asserts that he is entitled to a new trial because his colloquy with the judge was inadequate to provide the judge with a basis for concluding that the defendant voluntarily and intelligently waived his right to a jury trial. He also argues that the judge improperly denied a motion to suppress. We address each of these in turn.

1. The colloquy. To be effective, a defendant and judge's colloquy concerning the defendant's waiver of the constitutional right to a jury trial must be sufficient to satisfy the judge that the waiver is "voluntary and intelligent." Commonwealth v. Pavao, 423 Mass. 798, 802 (1996) (Pavao). There is also a statutory requirement of a signed written waiver. See G. L. c. 263, § 6. Here, the statute's requirement was satisfied, as the defendant signed a waiver form. In addition, the defendant's trial counsel signed a certificate, pursuant to G. L. c. 218, § 26A, affirming that he had explained the relevant protections afforded by a jury trial to the defendant. It is well settled that while statutorily required, such forms are inadequate by themselves to allow a judge to determine that a waiver of the right to a jury trial is voluntary and intelligent; although not constitutionally required, the Supreme Judicial Court requires a colloquy as a matter of sound judicial administration because "[s]o long as a colloquy occurs, the sole focus of [appellate] review is whether the colloquy has provided

an evidentiary record upon which the trial judge could find the waiver of a defendant was voluntary and intelligent."  Pavao, 423 Mass. at 800-802.

Thirty-six years ago the Supreme Judicial Court, while not "intend[ing] to create a rigid pattern" for such colloquies, noted some elements that such a colloquy "might" include (1) that the jury consists of members of the community, (2) that the defendant may participate in their selection, (3) that the verdict of the jury must be unanimous, (4) that they decide guilt or innocence while the judge makes rulings of law in the course of the trial, instructs the jury on the law, and imposes sentence in case of guilt; and (5) that, where a jury is waived, the judge alone decides guilt or innocence in accordance with the facts and the law.  The judge should make sure (6) that the defendant has conferred with his counsel about the waiver, and (7) that he has not been pressured or cajoled and is not intoxicated or otherwise rendered incapable of rational judgment.  Ciummei v. Commonwealth, 378 Mass. 504, 509-510 (1979).  The case law describes some additional questions the defendant might be asked:  his education level and language fluency, which should assist the judge in tailoring the colloquy appropriately, see Commonwealth v. Towers, 35 Mass. App. Ct. 557, 559 (1993) (stating that "[a]n inquiry about the defendant's level of education seems a common and significant

element of a colloquy"); his knowledge of the jury's size, see Commonwealth v. Ridlon, 54 Mass. App. Ct. 146, 151 (2002) (trial court colloquy described the size of the jury); and his knowledge of the constitutional basis of a defendant's right to a jury trial, see Commonwealth v. Hardy, 427 Mass. 379, 380-381 & n.3 (1998) (approving of colloquy in which court informed defendant of his "constitutional right to have a jury trial"). Several model jury trial colloquies are available and contain many of the above questions. See Jury Trial Manual for Criminal Offenses Tried in District Court, Appendix II, Jury Waiver Colloquy (1987) (including questions about defendant's age, education level, use of alcohol or drugs; describing several differences between jury and bench trials); Cypher, Criminal Practice and Procedure § 31.13 (4th ed. 2014) (same). We reiterate what we stated in 1993: "[T]alk in appellate decisions of what is or is not minimally sufficient is not the best guide to practice. Although judges need not follow verbatim any 'model' colloquy, they can take inspiration from the models." Commonwealth v. Towers, 35 Mass. App. Ct. at 560 n.4. See Commonwealth v. Onouha, 46 Mass. App. Ct. 904, 905 (1998) (stating "it would conserve the time of both the trial courts . . . and, certainly, the appellate courts, if trial judges, when conducting a jury waiver colloquy, kept at hand and followed the topic outline for that procedure which appears at

Smith, Criminal Practice & Procedure § 1654 [2d ed. 1983], or something along the same lines").

In this case the entire colloquy was as follows:

The court: "All right.  Mr. Garcia, good morning. I have some questions to ask you. My understanding is that you've chosen to have this case heard before me.  Is that correct?"

The defendant: "Yes, Your Honor."

The court: "Has anybody forced you into that?"

The defendant: "No, Your Honor."

The court: "You're making that decision of your own free will?"

The defendant: "Yes, Your Honor."

The court: "Do you understand that a trial consist[s] of two ways of going?  One is seven people sit there and they listen and they make a decision; or, six of them do.  The alternat[ive] is listen to it and I make a decision.  Do you understand that?"

The defendant: "Yes, Your Honor."

The court: "And have you had enough time to get some advice from your attorney and make a decision that you think is best?"

The defendant: "Yes, Your Honor."

The court: "All right.  I find it's going to be voluntary."

Our case law makes it clear that no particular form of words is required for an adequate jury trial waiver colloquy. Likewise, there are cases holding that the omission of one or

another inquiry will not necessarily render a colloquy insufficient. Thus, for example, this court has affirmed a conviction despite a colloquy in which "the judge failed to inform the defendant that a jury trial was a constitutional right or that the jury's verdict had to be unanimous," and where there was no description of the function of a judge at a bench trial as compared with a jury trial. Ridlon, 54 Mass. App. Ct. at 148. "The colloquy . . . is only evidence of whether a defendant's waiver of the right to trial by jury was voluntary and intelligent. It is not an independent constitutionally required prerequisite to a valid waiver of the right to a jury trial." Commonwealth v. Schofield, 391 Mass. 772, 775 (1984). But the colloquy must provide evidence sufficient for an appellate court to conclude the judge had adequate information properly to satisfy himself that any waiver by the defendant was made voluntarily and intelligently. Id. at 775-776.

In many respects, the judge's colloquy was thin. The judge did not ask about the defendant's level of education. He did not ask whether any promises had been made to the defendant. He did not provide any details about the procedure attendant upon a jury trial. Even the judge's explanation about how many jurors would sit and vote was ambiguous as to whether six jurors sit, or six jurors decide, and it did not explain that the vote of those six jurors for guilt must be unanimous.

Nonetheless, in a case this court heard shortly after the requirement of G. L. c. 218, § 26A, was enacted concerning signed jury waiver forms and certificates, we found that in combination with a signed form and certificate, as are present here, the following colloquy was sufficient:

> Judge: "Now, you have a right to have a trial by a jury on these charges, do you understand that . . . ?"
>
> Defendant: "Yes."
>
> Judge: "In a jury trial, you have a right to participate with your lawyer in choosing the jurors that would sit on your cases and decide your guilt or innocence on the charges, do you understand that?"
>
> Defense counsel: "You have to respond, Hector."
>
> Defendant: "Yes, Sir."
>
> Judge: "All right. And you want to waive that right and have these matters heard by a single judge, in this case myself?"
>
> Defendant: "Yes, Sir."
>
> Judge: "Okay. You understand that once you do that, you've given up your right to a jury trial?"
>
> Defendant: "Yes."

Commonwealth v. Hernandez, 42 Mass. App. Ct. 780, 783-784, 785 (1997).

Because the colloquy in this case was similar to that one, the motion judge did not err, and, in the absence of further guidance from the Supreme Judicial Court concerning what must be

contained in a jury-waiver colloquy, the colloquy does not provide the defendant grounds for reversal.

2. The motion to suppress. The defendant also argues that his motion to suppress should have been allowed. We disagree. The motion judge found that the defendant was seen by two police officers walking in a high crime area holding his waistband with his right hand in a way that, based on one officer's training and experience, the officer believed suggested possession of a firearm in his waistband.[2] The defendant repeatedly looked over his shoulder and when approached by police turned his body at least slightly so that the side on which he might have been holding a gun was away from the police officers -- something that the officers testified, based on their training and experience, was a movement (called "blading") that may imply an individual is hiding a weapon held on that side of the body from them. When they asked him to talk, he fled. The parties agree that the defendant was stopped subsequent to his flight.

While our courts have held that flight from the police alone is insufficient to support a conclusion of reasonable suspicion of criminal activity based on articulable facts, see Commonwealth v. Wren, 391 Mass. 705, 708 n.2 (1984) (Wren), it

---

[2] According to the motion judge's findings, the defendant "was keeping his right arm stiff . . . with his hand in front of his belt buckle. The arm was clenched next to his body and the hand was holding the area in the belt buckle whil[e] the other arm flowed freely."

remains a fact that such action, though not unlawful, may well be suspicious. Cf. Commonwealth v. Carrion, 407 Mass. 263, 277 (1990) ("Flight is perhaps the classic evidence of consciousness of guilt"). Where there is other suspicious behavior, flight from the police may be included in the reasonable suspicion calculus. Wren, 391 Mass. at 708 n.2. While the defendant would rely on Commonwealth v. Quezada, 67 Mass. App. Ct. 693, 696-697 (2006), S.C., 450 Mass. 1030 (2008) (Quezada), in that case the facts that accompanied the defendant's flight were themselves inadequately suspicious to add anything to the mix. Specifically, the defendant was walking with someone "known to have recently been released from prison" and the Commonwealth asserted the defendant's "manner and demeanor suggested that he was possibly under the influence of narcotics which, in turn, supported an inference that the defendant may have possessed other, not yet ingested narcotics," Quezada, 67 Mass. App. Ct. at 696, the latter of which claims this court dismissed as "nothing more than speculation." Id. at 697. Aside from the fact that defendant was in a high crime area (a factor, this court noted, that "must be treated with some caution"), id. at 697, in Quezada the police thus essentially had flight alone on which to base their claim of reasonable suspicion. Here, by contrast, the suspicious way the defendant held his waistband, the location in which he was walking, and his turning away from

the police when they approached him were sufficiently suspicious that, when combined with his flight, they provided the police with the reasonable suspicion based on articulable facts that a crime was afoot necessary to allow the stop of the defendant. Compare Commonwealth v. DePeiza, 449 Mass. 367, 371, 373-374 (2007).  Consequently, there was no error in the judge's denial of the motion to suppress.

Judgments affirmed.