A jury convicted the defendant, Osmany Rivera, of one count of assault and battery.[2] On this direct appeal he contends the trial judge erred in admitting recordings of 911 calls from the victim and in not declaring a mistrial after a police officer testified to prior bad acts. We affirm.
1. Authentication of the 911 calls. The defendant contends that the Commonwealth did not properly authenticate two recordings of 911 calls alleged to have come from the victim. We disagree.
Authentication "usually takes the form of testimony of a qualified witness either (1) that the thing is what its proponent represents it to be, or (2) that circumstances exist which imply that the thing is what its proponent represents it to be." Commonwealth v. Wheeler, 42 Mass. App. Ct. 933, 935 (1997), quoting from Leach & Liacos, Massachusetts Evidence 265 (4th ed. 1967). "A telephone conversation between a witness and a person the witness had never met may be admitted when confirming circumstances tend to authenticate the identity of the other person, even if ... the witness does not recognize the voice." Commonwealth v. Anderson, 404 Mass. 767, 770 (1989). We review the judge's decision to admit the recordings for abuse of discretion. See Commonwealth v. Rogers, 459 Mass. 249, 268 (2011).
The two 911 recordings at issue here were admitted through the testimony of each of the 911 dispatchers who had received calls, both of whom identified their own voices on the recordings. Furthermore, the caller provided identifying information, which connected the two calls to the victim. In the first call, the caller said she was at 102 Winthrop Street. In the second call, the caller repeated that she was at 102 Winthrop Street, and indicated that she had called five minutes earlier. She told the operator, "I think he broke my fucking knee," and pleaded that she needed the police. When police arrived at 102 Winthrop Street, they encountered the victim who had trouble standing as a result of pain in her knee. The evidence sufficiently supported the inference that the victim was the caller on the 911 tapes. See Anderson, supra. We discern no error.
2. Confrontation clause issues and the second 911 call. The defendant further contends admission of the second 911 call violated his Sixth Amendment to the United States Constitution right of confrontation because it contained the victim's testimonial hearsay statements in response to police questioning. See Commonwealth v. Rodriguez, 90 Mass. App. Ct. 315, 320 (2016). "[A]dmissibility of out-of-court statements is determined using a two-step inquiry." Commonwealth v. Simon, 456 Mass. 280, 295 (2010). The judge first determines whether the statements are admissible under the rules of evidence, then whether they are testimonial. See ibid. Here, it is clear that the first prong was met. At the time of the call, the victim was still recovering from a recent assault, she was still in pain, and pleading for assistance. The judge properly found the statement admissible as an excited utterance. See Commonwealth v. Santiago, 437 Mass. 620, 623 (2002). See also Commonwealth v. Marshall, 434 Mass. 358, 363-364 (2001) (victim's statement from two hours after defendant threatened her with knife is admissible as excited utterance).
When discerning under the second step whether the statement is testimonial, we accept the judge's findings of fact absent clear error, but independently apply the constitutional principles to those facts. See Simon, supra at 296. "[F]or a statement to be nontestimonial, there must be an ongoing emergency, and the primary purpose of the interrogation must be to meet that emergency, not to prove past events that may be relevant to [a] criminal investigation or prosecution." Commonwealth v. Beatrice, 460 Mass. 255, 259 (2011). Whether an emergency exists is contextual and "objectively assessed from the perspective of the parties to the interrogation at the time." Michigan v. Bryant, 562 U.S. 344, 361 n.8 (2011).
Applying these constitutional principles to the facts found here, we cannot say the second 911 call was testimonial. The victim had been recently assaulted, and was still reeling in pain from it. Although she believed he might have fled to his mother's house, she still displayed fear that he might return-telling the operator to hold on while she shut the door.
"When a victim making a 911 telephone call raises the possibility that a violent ... individual might still [be] at the scene, it is necessary for the dispatcher to determine the identity of the perpetrator and to ascertain whether the first responders would be encountering a dangerous situation. Knowledge of the perpetrator's identity assists the responding officers in determining whether the individual has a record of violence or mental disorder and enables the officers to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possible danger to the potential victim." Simon, 456 Mass. at 298-299 (quotations omitted). Where there was still a real potential of further danger to her and to the responding officers, the operator was right to concern herself with obtaining the attacker's identity and possible whereabouts. These questions did not elicit testimonial responses, and we discern no error. See ibid.
3. Prior bad act evidence. The defendant lastly contends that the trial judge erred in not declaring a mistrial after a police officer testified that she had responded to 102 Winthrop Street previously "for a domestic violence incident." We review a denial of a motion for a mistrial for abuse of discretion. See Commonwealth v. Lao, 460 Mass. 12, 19 (2011). Here, the trial judge immediately struck the testimony from the record and instructed the jury to disregard it. "Jurors are expected to follow instructions to disregard matters withdrawn from their consideration." Commonwealth v. Cameron, 385 Mass. 660, 668 (1982). The remark was also fleeting and generalized. Contrary to the defendant's assertion, it could not have left a lasting impression with the jurors that the defendant had committed a prior bad act. There was no error.
Judgment affirmed.

A charge of witness intimidation was dismissed for failure to prosecute, and the jury acquitted the defendant of one assault and battery with a dangerous weapon count.